IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ERSKINE A. DAWSON, JR.,

    Petitioner,

v.                                   CRIMINAL ACTION NO. 2:17-cr-61-2

UNITED STATES OF AMERICA,

    Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner **ERSKINE A. DAWSON, JR.**'s ("Petitioner") Motion for Compassionate Release. ECF Nos. 383 and 356. For the reasons stated below, Petitioner's Motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 21, 2017, Petitioner was named in a sixteen-count superseding indictment filed in the Eastern District of Virginia, Norfolk Division. ECF No. 58. Petitioner pled guilty to Counts One, Eleven, and Fifteen on July 18, 2017. ECF No. 76.

Count One charged Petitioner with Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Heroin, Fentanyl and Furanyl Fentanyl, in violation of 21 U.S.C. § 846, 841(a)(1), 841(b)(1)(A) and 841(b)(1)(C). *Id.* Count Eleven charged Petitioner with Possession of Firearms During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* Count Fifteen charged Petitioner with Distribution of Fentanyl Resulting in Death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. *Id.*

Beginning in or about May 2016 through December 2016, Petitioner led over half a dozen individuals in a heroin, fentanyl, and furanyl fentanyl trafficking conspiracy. ECF No. 151 at 7. During this conspiracy, Petitioner became aware of fatal overdoses linked to Petitioner's drug products in and

1

around the Hampton Roads community. *Id.* Petitioner continued to sell drugs until his arrest on December 8, 2016.

On November 1, 2017, Petitioner was sentenced to a term of imprisonment for 432 months. ECF No. 157. The Court later reduced Petitioner's sentence to 220 months, consisting of 160 months on Count One, 60 months on Count Eleven (consecutive to Count One), and 160 months on Count Fifteen (concurrent with Count One). ECF No. 301.

On April 19, 2021, Petitioner filed a *pro se* Motion for Compassionate Release based upon the ongoing COVID-19 pandemic. ECF No. 356. The Court ordered appropriate responses on April 30, 2021. ECF No. 364. Petitioner's counsel supplemented Petitioner's Motion on June 29, 2021. ECF No. 383. The Government responded in opposition on July 13, 2021. ECF No. 386. Petitioner did not file a reply. Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

Relevant to the issue of compassionate release, the text of 18 U.S.C. § 3582(c)(1)(A), as amended by the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("FIRST STEP Act"), provides:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment [] after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction; or
> > **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, [etc.].
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, pursuant to § 3582(c)(1)(A), a district court may reduce a sentence upon a petitioner's motion with the following findings: (1) the petitioner has achieved compliance with the 30 day exhaustion requirement, absent circumstances justifying its waiver; (2) the petitioner has made a demonstration satisfying the requirements of either § 3582 (c)(1)(A)(i) or § 3582 (c)(1)(A)(ii); (3) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (4) a reduction is supported by the application of the § 3553(a) factors.

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Federal Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* Courts may; however, waive the exhaustion requirement under exigent circumstances. *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

### B. Compassionate Release and the Applicable Policy Statements

Before passage of the FIRST STEP Act, the Sentencing Commission issued a policy statement governing protocols for compassionate release. *See* U.S.S.G. §1B1.13. The Sentencing Commission provided that a sentence may be modified upon consideration of the petitioner's medical condition, age, or family circumstances. U.S.S.G. §1B1.13, n. 1 (A)–(C). Additionally,

the Sentencing Commission further defined the limits under which a sentence reduction may be awarded. *Id.* The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Unfortunately, use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

Now, defendants may petition courts directly for a sentence modification, without seeking clearance from the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(1)(A). Moreover, U.S.S.G. §1B1.13 is now outdated following passage of the FIRST STEP Act and the Sentencing Commission has yet to issue any subsequent applicable policy statements. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *See McCoy v. United States*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive").

Therefore, the Court may consider a combination of factors, including—but not limited to—those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i). By statute, Congress specifically states that a

petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### III. DISCUSSION

#### A. The Exhaustion Issue

Petitioner alleges that he requested compassionate release from the warden of his facility on January 12, 2021. ECF No. 383 at 5. Petitioner proffers no evidence to that effect. The Government, however, argues that no such request was filed with Petitioner's correctional facility. ECF No. 386 at 8-11. In spite of the parties' discrepancy, this Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020). Accordingly, the Court will waive the exhaustion requirement based upon the ongoing threats COVID-19 imposes.

#### B. Resolution of Petitioner's Request for Compassionate Release

*1. Evaluation of Petitioner's "Extraordinary and Compelling Reason"*

In evaluating whether an "extraordinary and compelling reason" for release has been established based upon the COVID-19 pandemic, the Court considers the severity of the ongoing COVID-19 outbreak in federal prisons. *See e.g. Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the BOP's ineffective efforts to curtail the spread of the virus within FCI Elkton).

Here, Petitioner is presently incarcerated at FCI Yazoo City Medium which currently houses approximately 1,519 inmates. *FCI Yazoo City Medium*, BOP, https://www.bop.gov/locations/institutions/yam/. At this time, FCI Yazoo City Medium oversees 162 inmates who have recovered from COVID-19 and maintains one current COVID-19

5

diagnoses. *See COVID19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus/. As the BOP continues to distribute its allotment of COVID-19 vaccines, the entire Yazoo City FCC has fully vaccinated 2002 inmates. *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/.

Specific to each petitioner, the Court examines the Centers for Disease Control's list of risk factors for severe COVID-19 complications when assessing compassionate release motions during the pandemic. *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020). Here, Petitioner proffers his diabetes, hypertension, and an alleged cardiovascular disease as underlying conditions that may exacerbate a potential COVID-19 infection. ECF No. 383 at 2. The CDC does indicate that having diabetes or hypertension "can make you more likely to get severely ill from COVID-19."[1] While various cardiovascular diseases can also exacerbate the effects of a COVID-19 diagnosis, Petitioner does not state which cardiovascular disease is applicable to him. Despite Petitioner's ailments, however, the Court is unable to conclude that Petitioner presents an extraordinary and compelling reason to warrant release from prison.

The Court has examined the parties' filings and notes that Petitioner failed to submit any medical records despite the Court's April 30, 2021 Order acknowledging that "… Petitioner is initially responsible for providing any supporting medical records." ECF No. 364 at 2. While both Petitioner and the Government reference Petitioner's medical conditions and the various medications he is taking, the Court cannot determine whether Petitioner is particularly vulnerable to COVID-19 without any medical records to support his claims. Accordingly, Petitioner has failed to produce enough information about his medical issues to show a heightened risk of severe illness

---

[1] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

or death. *See United States v. Dickson*, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) ("[petitioner] offers no proof, such as medical records that would substantiate [underlying health issues]"); *United States v. Clark*, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release because the petitioner failed to supply medical records to substantiate medical claims).

Even still, based upon the briefings, it appears that Petitioner's hypertension and diabetes are controlled with long-term medication. ECF No. 383 at 10. Moreover, Petitioner is just 37 years of age and at the time of sentencing, he was 5'11, 185 pounds and "indicated he is in fair health" despite his high blood pressure and diabetes diagnoses. Critically, it appears that Petitioner was offered a COVID-19 vaccine but refused it. ECF No. 384. At this juncture, the BOP has administered 206,327 total vaccine doses to inmates and staff,[2] but Petitioner proffers no justification for his refusal. The Court cannot conclude that Petitioner's own failure to protect himself from the virus warrants an extraordinary and compelling reason for release.

The CDC advises that upon vaccination, "[y]ou can resume activities that you did prior to the pandemic."[3] Moreover, "COVID-19 vaccines are safe and effective at preventing COVID-19, including severe illness and death."[4] With this information from the CDC and knowing that Petitioner is in an environment in which most of the inmates within his facility are already vaccinated (and continue to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration.

---

[2] *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/.
[3] *When You've Been Fully Vaccinated*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Jul. 27, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.
[4] *Id.*

7

*2. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

In evaluating *18 U.S.C. § 3553(a)* as applied to Petitioner, even if Petitioner had an extraordinary and compelling reason for release, his § 3553(a) factors do not favor a sentence reduction at this time. The Court notes that Petitioner's offense conduct is much more serious than the title of the offense. *See* ECF No. 151. As a leader within the drug conspiracy, Petitioner's offense involved not just dealing drugs, but maintaining and operating a drug premises for distribution, possession of multiple firearms in furtherance of the conspiracy, and selling products that caused at minimum two deaths in the Hampton Roads area. *Id.* at 6-8. Moreover, at the time of sentencing, Petitioner had a criminal history category of III and a series of prior drug-related convictions and arrests. *Id.* at 14-21. Therefore, Petitioner's offense conduct strongly implicates the need for a sentence "to reflect the seriousness of the offense…and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A)–(B).

To date, Petitioner has served approximately 50 months of his 220-month sentence. The Court recognizes that Petitioner has strong familial support in the Eastern District of Virginia and successfully completed various rehabilitation programming. ECF No. 383 at 16-17. However, after full consideration of the § 3553(a) factors, the Court concludes that the purposes of Petitioner's sentence remain unfulfilled.

While the world continues to grapple with the pandemic, it is imperative to acknowledge that many persons who are incarcerated suffer from a variety of ailments that may make them susceptible to severe illness from a COVID-19 diagnosis. With the added protection of a COVID-19 vaccine, vaccinated inmates with various comorbidities are now better positioned against a COVID-19 diagnosis than the inmates who were released prior to widespread accessibility to a COVID-19 vaccine. As the Court continues to exercise its discretion in releasing the most

vulnerable inmates in light of the pandemic, the Court declines to release inmates who lack a significant showing of potential fatality from a COVID-19 diagnosis. Based upon the foregoing reasoning, the Court is unable to find an extraordinary and compelling reason for relief after considering the unfulfilled purposes of Petitioner's original sentence.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**. The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
August /2, 2021

/s/
Raymond A. Jackson
United States District Judge

9